
[No. A123599. First Dist., Div. Two. Aug. 31, 2009.]

In re LUIS F., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
LUIS F., Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION‡]**

‡Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part I.

Counsel

Scott D. Handleman, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Gerald A. Engler, Assistant Attorney General, Laurence K. Sullivan and Martin S. Kaye, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

RICHMAN, J.—

## INTRODUCTION

Luis F. appeals from a disposition declaring him a ward of the court under Welfare and Institutions Code section 602[1] based on his attempted second degree robbery (Pen. Code, §§ 211, 664) of a fellow high school student. After a contested hearing, the juvenile court found Luis had committed the crime and placed him on probation.

Luis claims there was insufficient evidence to support the finding that he had attempted a robbery, claiming instead that it was an attempted theft from the person, followed by a battery. He further claims that one of the conditions of probation—that he continue to take prescribed medications—is unlawful and must be stricken. We modify the judgment by clarifying that Luis must continue to take only those medications prescribed for depression and social anxiety disorder. Otherwise we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 25, 2008, 17-year-old Luis was caught on his high school campus with an Ecstasy pill and cited for a misdemeanor violation of Health and Safety Code section 11377, subdivision (a). He was taken to the office, where he was expelled from school.

While unsupervised, he wandered back onto campus and entered a restroom, where he encountered another student, Colin S., whom he had not known previously. He demanded money from Colin, who told him he did not have any money. Luis then told Colin to empty his pockets. Colin complied,

---

[1] Statutory references are to the Welfare and Institutions Code unless otherwise indicated.

pulling out a cell phone and an MP3 player. Luis then demanded that Colin give him the MP3 player, but Colin refused, putting it back into his pocket.

Luis then punched Colin in the face. Colin responded by attempting to tackle Luis. The two boys fought, eventually moving out of the bathroom and onto the campus grounds. Colin took Luis to the ground at some point, and Luis tried to get Colin off of him. The fight continued until it was broken up by teachers and Fairfield Police Officer Larry Banks, the school resource officer. Colin sustained some superficial scratches and swelling as a result of the fight. Luis did not obtain any property from Colin.

Officer Banks escorted the boys to the office and questioned them separately. After Colin told Officer Banks that Luis had tried to rob him, the officer confronted Luis with this accusation. Officer Banks told Luis that Colin said Luis had "attempted to take property from him by force." After waiving his *Miranda* rights,[2] Luis admitted that he had tried to rob Colin because he needed money to repay some loans. He was taken into custody, and a section 602 petition was filed the next day.[3]

On October 20, 2008, following a contested jurisdictional hearing, Luis was found to have committed an attempted robbery. At the dispositional hearing on November 10, 2008, Luis was adjudged a ward of the court under section 602. He was placed on probation, but was allowed to remain in his parents' home under the supervision of the probation officer. The terms of probation included, as pertinent to this appeal, that Luis was to "continue taking prescribed medications, as directed." More specifically, the juvenile court said, "I want you to continue to follow the directions of your doctors and counselors and this includes the taking of medication as prescribed."

The probation department reports noted that Luis had been diagnosed with depression and social anxiety disorder two years prior to the attempted robbery, that he had been in psychological counseling ever since, and that he was taking Prozac and Klonopin for his mental health conditions. Luis met with his doctors on a monthly or bimonthly basis to review his prescriptions and dosages. Luis's social anxiety disorder had led him to isolate himself, refusing to attend school or go out with his family. He believed he was not accepted by his peers, and that led to depression. Both he and his father expressed the opinion that his mental difficulties contributed to his poor school performance. "However, Luis believes that his current medication is effective and has allowed him to excel academically."

---

[2] *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602].

[3] In addition to the attempted robbery, the petition alleged as misdemeanors possession of the Ecstasy pill on the morning of the attempted robbery and driving under the influence five days prior to the attempted robbery. The two misdemeanor allegations were dismissed by the district attorney, then refiled, and then dismissed again with comment and restitution.

## DISCUSSION

I. *The Evidence Was Sufficient to Sustain a Finding That Luis Committed Attempted Robbery.*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

II. *The Condition of Probation Requiring Luis to Take All Prescribed Medications Applies Only to His Continuing to Take Medications Prescribed for Depression or Social Anxiety Disorder, and As So Construed Is Lawful.*

Luis also claims the condition of probation requiring him to continue taking medications prescribed by his doctor is unconstitutionally vague and overbroad under both the state and federal Constitutions. Luis relied in his opening brief on a Sixth District case which, he acknowledges, has since been ordered depublished by the Supreme Court. We therefore place no reliance on that case.

■ We note at the outset that defense counsel registered no objection to the medication requirement. Whether the issue has been preserved for appeal is governed by *In re Sheena K.* (2007) 40 Cal.4th 875, 890 [55 Cal.Rptr.3d 716, 153 P.3d 282] (*Sheena K.*), in which the Supreme Court concluded that the failure to object to a condition of probation does not necessarily avoid the normal rule of forfeiture on appeal simply because it involves a constitutional challenge on grounds of vagueness or overbreadth. (*Id.* at pp. 886–887.) A challenge on such grounds is forfeited by failure to object unless the error is one that is "capable of correction without reference to the particular sentencing record developed in the trial court." (*Id.* at p. 887.) In the latter circumstance, such a claim may "present a pure question of law" properly addressed on appeal, even if there was no objection below. (*Ibid.*)

In *Sheena K.*, the minor claimed for the first time on appeal that a probation condition prohibiting association with persons disapproved of by the probation department was unconstitutionally vague and overbroad because it did not convey to the minor knowledge of who was disapproved, nor did it require her to know that a person was disapproved before she could be found in violation of probation for associating with that person. (*Sheena K., supra,* 40 Cal.4th at p. 879.) Our Supreme Court resolved the minor's claim on the merits because it was not necessary to review the underlying facts and circumstances, but only to consider "abstract and generalized legal concepts." (*Id.* at p. 885.) It held that the condition of probation was unconstitutionally vague, but that the defect could be rectified by modifying the condition so

---

[*]See footnote, *ante,* page 176.

that it applied only to persons known by the minor to be disapproved of by probation. (*Id.* at pp. 890–892.)

Luis claims that the medication requirement is vague and overbroad both on its face and as applied. Unlike the defect in *Sheena K.*, the alleged defects in the medication requirement here cannot be determined or potentially corrected based on abstract and generalized legal principles. The court ordered Luis to "continue" to take prescribed medications, not more broadly to "take" any and all prescribed medications. Thus, the scope of the medication requirement, and its constitutionality, can be determined only in light of the facts and circumstances disclosed in the record regarding the medications that Luis had been taking prior to the court order. Under the holding of *Sheena K.*, Luis's objection would appear to have been forfeited, despite his labeling it in part a facial challenge.

Moreover, we are unwilling to reach the merits by finding that counsel's failure to object constituted ineffective assistance, as Luis urges us to do. The Supreme Court has "repeatedly stressed 'that "[if] the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged[,] . . . unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation," the claim on appeal must be rejected.' [Citation.]" (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266 [62 Cal.Rptr.2d 437, 933 P.2d 1134].)

The record shows that Luis and his father agreed to the terms of the plan recommended by the probation department, although it is not clear whether they specifically agreed to the medication requirement.[5] Still, Luis's cooperative attitude and the fact that he was already taking psychotropic medications on a voluntary basis, as well as his own assessment that the medications were helping him, may have influenced the attorney's decision not to object. Indeed, Luis may have instructed his attorney not to object. (See *Strickland v. Washington* (1984) 466 U.S. 668, 691 [80 L.Ed.2d 674, 104 S.Ct. 2052] ["The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions."].) While it may have been the better practice at least to request clarification of the medication condition, counsel may have believed the scope of the medication requirement was evident in light of the probation report. On the record before us, we

---

[5] The Attorney General suggests that Luis specifically "endorsed" the medication condition of probation by failing to object. The dispositional report does say that Luis and his father "[b]oth are in agreement with the Probation plan." However, the main body of the dispositional report does not indicate that mandatory medication would be a part of that plan. The attached recommendation to the court does reflect a medication requirement, but it is not clear whether this was part of the "plan" to which Luis and his father acceded. Therefore, we do not base our decision on the specific finding that Luis or his parents consented to the medication requirement.

cannot say that counsel's conduct fell below an objectively reasonable standard of professional performance.

■ Nevertheless, we are troubled by the breadth of the medication requirement as stated by the juvenile court—if given too literal an interpretation—because it potentially implicates important constitutional rights. The underpinning of Luis's constitutional argument is that the medication requirement infringes on his right of privacy under the California Constitution, which broadly " 'guarantees to [a competent, nondangerous] individual the freedom to choose to reject, or refuse to consent to, intrusions of his bodily integrity,' " and encompasses the right to refuse unwanted medication. (*In re Qawi* (2004) 32 Cal.4th 1, 14 [7 Cal.Rptr.3d 780, 81 P.3d 224], quoting *Conservatorship of Wendland* (2001) 26 Cal.4th 519, 531–532 [110 Cal.Rptr.2d 412, 28 P.3d 151]; see Cal. Const., art. I, § 1.)

In addition, Luis argues that he has a protected liberty interest under the due process clause of the Fourteenth Amendment in avoiding the coerced administration of psychotropic drugs, citing *U.S. v. Williams* (9th Cir. 2004) 356 F.3d 1045, 1053–1055 (*Williams*). *Williams*, in turn, relied on cases decided by the United States Supreme Court involving forcible administration of certain psychotropic medications.[6] While a medication condition of probation may not be regarded as equivalent to "forcible administration," *Williams* found that the underlying threat of incarceration rendered a medication condition of supervised release sufficiently coercive to implicate the defendant's protected liberty interest under the Fourteenth Amendment. (356 F.3d at pp. 1053–1055 & fn. 10.) It further found that increased procedural protections were warranted under the federal supervised release statute to protect that liberty interest. (*Id.* at pp. 1055–1056.)

■ In light of these claims, we elect to address the merits of Luis's claim despite his lack of objection below. (*People v. Vera* (1997) 15 Cal.4th 269, 276–277 [62 Cal.Rptr.2d 754, 934 P.2d 1279] [appellate court may excuse a

---

[6] In *Washington v. Harper* (1990) 494 U.S. 210 [108 L.Ed.2d 178, 110 S.Ct. 1028] (*Harper*), the court held that a state could not forcibly administer antipsychotic drugs to a prison inmate unless he or she was dangerous to himself/herself or others and the treatment was in the inmate's medical interest. (*Id.* at pp. 221–222, 227.) *Riggins v. Nevada* (1992) 504 U.S. 127, 133–135 [118 L.Ed.2d 479, 112 S.Ct. 1810], found forcible administration of antipsychotic drugs during trial requires "a finding of overriding justification and a determination of medical appropriateness." *Sell v. United States* (2003) 539 U.S. 166, 179 [156 L.Ed.2d 197, 123 S.Ct. 2174], held that to justify the forcible administration of antipsychotic drugs to render a defendant competent for trial, such medication must be medically appropriate, substantially unlikely to have side effects that may undermine the fairness of the trial, and, taking account of less intrusive alternatives, necessary to significantly further important governmental trial-related interests. (See also *Carter v. Superior Court* (2006) 141 Cal.App.4th 992 [46 Cal.Rptr.3d 507] [forcible administration of antipsychotic medications to render a defendant competent for trial].)

failure to object where the claimed error affects a defendant's fundamental constitutional rights].) " '[T]he fact that a party, by failing to raise an issue below, may forfeit the right to raise the issue on appeal does not mean that an *appellate court* is precluded from considering the issue.' [Citation.] Generally, whether or not an appellate court should excuse the lack of a trial court objection 'is entrusted to its discretion.' (*People v. Williams* (1998) 17 Cal.4th 148, 161–162, fn. 6 [69 Cal.Rptr.2d 917, 948 P.2d 429].)" (*People v. Abbaszadeh* (2003) 106 Cal.App.4th 642, 649 [130 Cal.Rptr.2d 873]; see also *Sheena K., supra*, 40 Cal.4th at pp. 887–888, fn. 7; *People v. Ellison* (2003) 111 Cal.App.4th 1360, 1370 [4 Cal.Rptr.3d 713].)

In substance, Luis's concerns about the medication requirement are both practical and conceptual, his challenges both facial and as applied. First, he claims the condition is vague and overbroad on its face because, read literally, it would require him to take any and all medications prescribed by his doctor, including for instance, medication for "toenail fungus, acne . . . [or] allergies . . . ." Such a requirement, he contends, would be irrelevant to the crime he committed and would subject him to possible future incarceration without having any bearing on his future criminality. Second, even if construed more narrowly, he contends the coercive requirement that he continue taking psychotropic medications on pain of incarceration impermissibly infringes on his privacy and liberty interests in bodily integrity and autonomy.

We agree with Luis that if the medication requirement were intended to subject him to future incarceration for failing to treat his toenail fungus as prescribed by a doctor, it would be impermissibly overbroad—not to mention unreasonable and arbitrary. But there is no indication in the record that Luis was taking prescribed medication to treat toenail fungus prior to the court's disposition, and therefore no reason to believe the court's order requiring him to "continue" taking prescribed medications would have such a broad impact.

Even if such an interpretation of the literal language of the court-imposed requirement were possible, the record shows that the court intended the medication condition to have a much narrower scope. As discussed hereafter, the probation condition must be construed as only requiring Luis to continue taking medications prescribed by his doctors for depression and social anxiety disorder.

In light of the decertification of the Sixth District case upon which he chiefly relied in his briefing, Luis's position on the liberty interest at stake is most strongly supported by *Williams, supra*, 356 F.3d 1045, which involved a

college student who sent threatening e-mails to one of his teachers.[7] Initially found incompetent to stand trial, Williams was hospitalized and involuntarily medicated with antipsychotic drugs. Once he regained his competency he continued taking the antipsychotic medications on a voluntary basis, although the record shows that they caused him to experience " 'lethargy, blurred vision, and dry mouth,' " and they made him feel "lousy" and "medicated." (356 F.3d at pp. 1049–1050.) In light of these side effects, Williams objected at sentencing to a continuing medication condition, indicating that at some point in the future he probably would want to discontinue the medication. (*Id.* at pp. 1050–1051.)

The judge nevertheless imposed a condition of supervised release requiring Williams to take all " 'psychotropic and other medications prescribed for him by physicians treating his mental illness.' " (*Williams, supra,* 356 F.3d at p. 1047, fn. omitted; see *id.* at p. 1047, fn. 3.) The propriety of this condition was appealed to the Ninth Circuit.

Under the federal statutes, a condition of supervised release ordinarily must be "reasonably related" to one or more of the statutory factors deemed to advance the goals of supervised release. (18 U.S.C. § 3583(d)(1); see also 18 U.S.C. § 3553(a)(1), (2)(B), (2)(C) & (2)(D) [specifying factors relevant to supervised release].) In light of the significant liberty interest at stake in the context of coerced psychotropic medication, however, *Williams* appears to demand a stronger nexus between the need for medication and the goals of supervised release, requiring that the medication condition be "necessary" for the achievement of those goals, not simply " 'reasonably related' " to them. (*Williams, supra,* 356 F.3d at pp. 1052–1053, 1057; see also *U.S. v. Weber* (9th Cir. 2006) 451 F.3d 552, 561, 568 (*Weber*) [a condition implicating a "sufficiently weighty" liberty interest must be "reasonably necessary" to the underlying goals of supervised release].)

Additionally, while acknowledging that imposition of most terms of supervised release do not require the court to articulate reasons on the record, *Williams* concluded that requiring a defendant to take antipsychotic medications as a condition of supervised release requires an express finding that the condition " 'involves no greater deprivation of liberty than is reasonably necessary for the purposes' " underlying the supervised release statute. (*Williams, supra,* 356 F.3d at pp. 1053, 1056, quoting 18 U.S.C.

---

[7] We are not bound by federal appellate cases, although we give them respectful consideration on federal constitutional issues. (See *People v. Bradley* (1969) 1 Cal.3d 80, 86 [81 Cal.Rptr. 457, 460 P.2d 129].) We discuss *Williams,* at some length to explain why we decline to follow its procedural requirements. (See also *U.S. v. Holman* (4th Cir. 2008) 532 F.3d 284, 290, cert. den. *sub nom. Holman v. U.S.* (2008) ___ U.S. ___ [172 L.Ed.2d 381, 129 S.Ct. 522] [noting split of authority in federal circuits on issue decided in *Williams*].)

§ 3583(d)(2).) A condition of supervised release must meet that standard in all federal cases under 18 United States Code section 3583(d)(2), but the additional requirement of on-the-record compliance with that statutory provision appears to stem from the court's belief that the Supreme Court's forcible administration cases dictate such a result. (356 F.3d at p. 1055.)

Finally, *Williams* required the sentencing court to develop a "medically-informed" record before imposing a medication requirement. (*Williams, supra,* 356 F.3d at pp. 1056–1057.) The court held that "before a mandatory medication condition can be imposed at sentencing, the district court must make on-the-record, medically-grounded findings that court-ordered medication is necessary to accomplish one or more of the [factors relevant to supervised release] . . . [and] must make an explicit finding on the record that the condition 'involves no greater deprivation of liberty than is reasonably necessary.' " (*Id.* at p. 1057, quoting 18 U.S.C. § 3583(d)(2); see also *Weber, supra,* 451 F.3d at pp. 568–569 [requiring similar findings to support penile plethysmograph testing as a condition of supervised release];[8] *U.S. v. Cope* (9th Cir. 2008) 527 F.3d 944, 955 & fn. 5, cert. den. *sub nom. Cope v. U.S.* (2008) ___ U.S. ___ [172 L.Ed.2d 232, 129 S.Ct. 321] (*Cope*) [explaining that *Williams* applies to any condition of supervised release that " 'implicates a particularly significant liberty interest of the defendant,' " and this would include involuntary chemical castration, such as by use of Depo-Provera].)

There is a crucial difference, however, between this case and *Williams.* Although the condition under scrutiny in *Williams* related to "psychotropic medications," the defendant in that case was actually taking Haldol, an older *antipsychotic* drug with significant adverse Parkinson's-like side effects. (*Williams, supra,* 356 F.3d at pp. 1050, 1055.) Indeed, the Ninth Circuit specifically limited its consideration of "psychotropic" medications to " 'antipsychotic' or 'neuroleptic' drugs, 'any of the powerful tranquilizers (as the phenothiazines) used esp. to treat psychosis and believed to act by blocking dopamine nervous receptors.' [Citation.]" (*Id.* at p. 1047, fn. 2; see also *Cope, supra,* 527 F.3d at pp. 953–954 [noting *Williams* is limited to antipsychotics].) The Supreme Court cases upon which *Williams* relied also dealt exclusively with *antipsychotic* medications.[9] (See fn. 6, *ante.*) Luis cites no

---

[8] Penile plethysmograph testing involves attaching a pressure-sensitive device to a man's penis to determine his level of arousal when exposed to various sexually stimulating visual or auditory inputs. (*Weber, supra,* 451 F.3d at pp. 554, 562.)

[9] Section 5008, subdivision (*l*) defines antipsychotic medication as "any medication customarily prescribed for the treatment of symptoms of psychoses and other severe mental and emotional disorders." "Psychotropic" is defined more broadly as "acting on the mind." (Merriam-Webster's Collegiate Dict. (10th ed. 2001) p. 941; see also § 739.5, subd. (d) ["Psychotropic medication or psychotropic drugs are those medications administered for the purpose of affecting the central nervous system to treat psychiatric disorders or illnesses. These medications include, but are not limited to, anxiolytic agents, antidepressants, mood stabilizers,

case applying the same procedural requirements to milder forms of psychotropic drugs, such as antidepressants and anxiolytics.

*Williams* identified two major concerns that make the administration of unwanted antipsychotic medications a " 'particularly severe' " invasion of personal liberty. (*Williams, supra,* 356 F.3d at p. 1054.) "First, the drugs 'tinker[] with the mental processes,' [citation], affecting cognition, concentration, behavior, and demeanor. While the resulting personality change is intended to, and often does, eliminate undesirable behaviors, that change also, if unwanted, interferes with a person's self-autonomy, and can impair his or her ability to function in particular contexts." (*Ibid.*) Second, " '[w]hile the therapeutic benefits of antipsychotic drugs are well documented, it is also true that the drugs can have serious, even fatal, side effects . . . .' " (*Ibid.*, quoting *Harper, supra,* 494 U.S. at p. 229.)

But all psychotropic drugs are not created equal. While antidepressants and anxiolytics no doubt "tinker with the mental processes," there is no factual support in the record before us that the less potent psychotropic medications covered by Luis's condition of probation would "impair[] [Luis's] ability to function," would produce wholesale personality changes, or would threaten life-altering side effects similar to those described in the federal cases cited *ante.* (*Williams, supra,* 356 F.3d at p. 1054.) Likewise, Luis himself, in discussing his medications with the probation officer, reported no troubling side effects from his medications. Thus, Luis has not established that the invasion of his personal liberty is as significant as that involved in *Williams* and similar cases.

We also find other significant differences between this case and *Williams* that lead us to decline to adopt, in the context of this case, a blanket requirement of "necessity" for a medication condition of probation, explicit consideration of less restrictive alternatives, or "on-the-record, medically-grounded findings" as a matter of federal constitutional imperative. First, we are dealing with a juvenile offender, not an adult. Second, *Williams* reached its conclusion about the required procedures under the federal statutes pertaining to supervised release, which of course do not govern our determination. Third, to the extent *Williams* called for independent medical evaluation, and to the extent such input is statutorily required in other contexts (see § 739.5, subd. (a)), that input was supplied in this case to the satisfaction of Luis and his family by their own chosen doctors, who had independently prescribed psychotropic medication and would continue, under the condition

---

antipsychotic medications, anti-Parkinson agents, hypnotics, medications for dementia, and psychostimulants."].) For purposes of this opinion, we consider the medications required under the condition of probation to be "psychotropic" medications, but not "antipsychotic" drugs, as neither of Luis's psychological conditions would be classified as a psychosis.

of probation, to determine the medically appropriate course of treatment. Fourth, and as noted above, there is no evidence in the record before us that the medications subject to Luis's condition of probation cause serious side effects comparable to those discussed in *Williams*, nor do they implicate the invasion of bodily privacy and sexual function involved in *Weber, supra*, 451 F.3d 552, and *Cope, supra*, 527 F.3d 944. Finally, because Luis was already taking psychotropic medications for depression and social anxiety disorder—and apparently had no objection to continuing to do so (see fn. 5, *ante*)—the aspect of *involuntary* administration of *unwanted* mind-altering drugs does not come into play here.

 The California Legislature has given trial courts broad discretion to devise appropriate conditions of probation, so long as they are intended to promote the "reformation and rehabilitation" of the probationer. (Pen. Code, § 1203.1, subd. (j).) There are three requirements for a probation condition to be invalid as an unreasonable exercise of discretion: (1) it must have no relationship to the crime of which the offender was convicted, (2) it must relate to conduct which is not in itself criminal, and (3) it must require or forbid conduct which is not reasonably related to future criminality. (*People v. Olguin* (2008) 45 Cal.4th 375, 379 [87 Cal.Rptr.3d 199, 198 P.3d 1].) Thus, "even if a condition of probation has no relationship to the crime of which a defendant was convicted and involves conduct that is not itself criminal, the condition is valid as long as the condition is reasonably related to preventing future criminality." (*Id.* at p. 380.)

In the case of juvenile offenders, the discretion is even broader. Section 727, subdivision (a) provides: "When a minor is adjudged a ward of the court on the ground that he or she is a person described by Section 601 or 602, the court may make any and all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the minor, *including medical treatment*, subject to further order of the court."[10] (Italics added.) Likewise, section 730 provides in relevant part: "(a) When a minor is adjudged a ward of the court on the ground that he or she is a person described by Section 602, the court may order any of the types of treatment referred to in Section 727 . . . . [¶] (b) When a ward described in subdivision (a) is placed under the

[10] Section 739.5, adopted effective January 1, 2008 (Stats. 2007, ch. 120, § 1), requires court authorization for administration of psychotropic drugs to wards of the court under section 601 or 602 who have been placed in foster care, but allows authorization for such treatment to be delegated to a qualified parent. (§ 739.5, subd. (a).) It includes within the definition of "psychotropic medications" both "anxiolytic agents" and "antidepressants." (§ 739.5, subd. (d).) It specifies no substantive standards for judicial authorization of such treatment. (But see Cal. Rules of Court, rule 5.640(d), incorporating rule 5.570, which would appear to require proof by a preponderance of evidence that the "best interest of the child may be promoted by the proposed" medication or "that the ward's welfare requires" the medication. (Cal. Rules of Court, rule 5.570(e), (i).)

supervision of the probation officer . . . , the court may make any and all reasonable orders for the conduct of the ward . . . . The court may impose and require any and all reasonable conditions that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced."

■ The California Supreme Court has acknowledged a distinction between the permissible scope of discretion in probationary sentencing by the juvenile court and that allowed for adults: "Although the goal of both types of probation is the rehabilitation of the offender, '[j]uvenile probation is not, as with an adult, an act of leniency in lieu of statutory punishment; it is an ingredient of a final order for the minor's reformation and rehabilitation.' " (*In re Tyrell J.* (1994) 8 Cal.4th 68, 81 [32 Cal.Rptr.2d 33, 876 P.2d 519], overruled on other grounds in *In re Jaime P.* (2006) 40 Cal.4th 128, 130 [51 Cal.Rptr.3d 430, 146 P.3d 965].) " 'In light of this difference, a condition of probation that would be unconstitutional or otherwise improper for an adult probationer may be permissible for a minor under the supervision of the juvenile court. . . .' " (*Sheena K., supra,* 40 Cal.4th at p. 889; see also *In re Frank V.* (1991) 233 Cal.App.3d 1232, 1242–1243 [285 Cal.Rptr. 16] [this rule derives from the court's role as *parens patriae*].)

■ Of course, the juvenile court's discretion is not boundless. *Sheena K.,* for example, involved a challenge to conditions of juvenile probation based on vagueness and overbreadth. (*Sheena K., supra,* 40 Cal.4th at p. 889.) Under the void for vagueness constitutional limitation, "[a]n order must be sufficiently precise for the probationer to know what is required of him, and for the court to determine whether the condition has been violated." (*People v. Reinertson* (1986) 178 Cal.App.3d 320, 324–325 [223 Cal.Rptr. 670]; see also *Sheena K., supra,* 40 Cal.4th at p. 890.) In addition, the overbreadth doctrine requires that conditions of probation that impinge on constitutional rights must be tailored carefully and reasonably related to the compelling state interest in reformation and rehabilitation. (*Sheena K., supra,* 40 Cal.4th at p. 890; *People v. O'Neil* (2008) 165 Cal.App.4th 1351, 1356 [81 Cal.Rptr.3d 878]; *People v. Delvalle* (1994) 26 Cal.App.4th 869, 879 [31 Cal.Rptr.2d 725].) "If available alternative means exist which are less violative of the constitutional right and are narrowly drawn so as to correlate more closely with the purposes contemplated, those alternatives should be used . . . ." (*In re White* (1979) 97 Cal.App.3d 141, 150 [158 Cal.Rptr. 562].)

Here, the trial court considered it wise to impose a continuing medication requirement because Luis himself reported that he suffered from depression and social anxiety disorder, for which he was already taking medication that helped him to perform better in school. The probation department's dispositional report recites, "Luis reported that his social anxiety disorder makes it

difficult for him to interact with his peers. He reportedly becomes nervous and anxious, making it difficult to have normal social interactions. As a result, the minor believes he is not accepted by his peers, which has caused him to go into a state of depression. [Luis's father] feels this is the reason the minor was having difficulty in school. The minor concurred that he often cuts school to avoid having to deal with his peers. However, Luis believes that his current medication is effective and has allowed him to excel academically." Luis's father reported that, after trying other medications, Luis found that Klonopin helped to control the "anxiety and panic attacks associated with his diagnosed social anxiety disorder." The probation officer concluded that "Luis has diagnosed mental health issues that have affected his school performance and behavior . . . ."

That Luis has been medically diagnosed with these conditions is substantiated by his own statements and the statements of his father to the probation officer. The doctors treating him for these disorders were named in the probation report. Therefore, to the extent a "medically-informed" record might be required, we believe this case provides one. Indeed, Luis's psychological impairment was significant enough to have put him in the hospital for two weeks in June 2008, when he was having suicidal thoughts. He had been under a doctor's care for his mental health issues for more than two years before the incident that brought him before the court, and the fact that he was already taking medications for his psychological conditions negates any claim that he or his parents had a personal objection to his taking such psychotropic drugs.[11] Thus, the record as a whole, including that Luis was directed to "continue to follow the directions of [his] doctors and *counselors*," clarifies that the medication requirement was impliedly limited to medications prescribed for the conditions of depression and social anxiety disorder.

Luis points out that, since he was taking his medications at the time of the attempted robbery, there is no evidence that his offense was in any way related to his mental health issues or a failure to take his medication. Nor, he argues, is there any reason to believe that compliance with the medication condition will deter his future criminality. It may be inferred from the probation report, however, that Luis's psychological condition may have played a role in the attempted robbery of Colin. Luis reported that he committed that offense in part because he was upset about being expelled from school and was unable to control his angry impulses. Thus, when he

---

[11] *Harper, supra*, 494 U.S. 210, 221 identified the defendant's interest as "avoiding the *unwanted* administration of antipsychotic drugs." (Italics added.) The court further framed the question presented as being when "the State may treat a mentally ill prisoner with antipsychotic drugs *against his will*." (*Id.* at p. 213, italics added.)

became frustrated, he vented his anger by trying to rob one of his schoolmates, suggesting that this form of aggression may have been in part due to his feeling of alienation from and rejection by his peers.

Moreover, the probation report made it clear that Luis's doctors were reviewing the efficacy of his medication on a regular basis. The fact that the current prescriptions may not have been successful in completely eliminating the negative effects of his mental health problems does not lead to the conclusion that continuing to take the medications recommended by his doctors would not enhance his reformation and rehabilitation. Furthermore, the probation dispositional report noted that Luis had reduced his consumption of marijuana considerably based on his therapist's warning of its negative interaction with his medications. Continuing his medication may well have a beneficial impact on that form of future criminality, if no other.

The court could reasonably have concluded that Luis's social adjustment and school performance would deteriorate in the absence of these medications—and Luis's continued adherence to his doctor's prescription of psychotropic medications was part of the overall plan for the reformation of Luis's character and the enhancement of his future prospects through improved social adjustment and success in school. We conclude the court acted within its discretion and did not violate either the state or federal Constitution in ordering Luis to continue to cooperate in his treatment by complying with his doctor's future prescriptions of medication for depression and social anxiety disorder.

· ■ We have already concluded that, to the extent Luis has a federally recognized liberty interest in avoiding coerced psychotropic medication, imposition of the medication requirement in this case did not violate due process. Even assuming that the state constitutional right to privacy may be broader than the federal liberty interest, it is not absolute. (*In re Qawi, supra*, 32 Cal.4th at p. 15.) The first step in asserting a state constitutional privacy claim is to identify "a specific, legally protected privacy interest." (*Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 35 [26 Cal.Rptr.2d 834, 865 P.2d 633].) Luis identifies this interest as the right to "refuse unwanted medication," citing *In re Qawi, supra*, 32 Cal.4th at page 14. But as noted previously, there is no evidence in the record that the medication in this case was "unwanted."

Indeed, we question whether Luis has standing to assert a state constitutional privacy right, since he never refused to take Prozac or Klonopin, or even expressed any reservations about taking them. (See *People v. Dominguez* (1981) 121 Cal.App.3d 481, 505 [175 Cal.Rptr. 445] [state constitutional right of privacy is personal and may not be asserted derivatively]; see

generally *Matrixx Initiatives, Inc. v. Doe* (2006) 138 Cal.App.4th 872, 877–881 [42 Cal.Rptr.3d 79] [nonparties to lawsuit could not resist discovery order requiring identification of third parties based on privacy rights of third parties].)

Luis suggests in his briefing that he may, at some future time, decide that "the side effects outweigh the benefits of his prescribed antidepressants." If that eventuality comes to pass, he will be free to petition the court for a modification of the terms of probation under section 778. (See also § 775.) However, we will not now declare the condition of probation unconstitutional based on the hypothetical possibility that Luis may want to decline medication in the future.

■ Under the circumstances of this case, we uphold the juvenile court's intended exercise of discretion by construing the medication condition in a manner that allows it to pass constitutional muster. It is proper to use the record of the proceeding below to elucidate the scope of the intended condition, to the extent it is otherwise ambiguous or overbroad. (*In re Frank V., supra*, 233 Cal.App.3d at pp. 1237, 1241–1242 [upholding probation condition forbidding the minor to associate with any individuals "disapproved of by his probation officer" based on juvenile court's limiting statement that he could not associate with people whom his parents or probation officer " 'tell you . . . that you can't hang out with' "].)

It is therefore appropriate to modify the condition of probation to make that limitation express. (See *Sheena K., supra*, 40 Cal.4th at p. 892; *In re Justin S.* (2001) 93 Cal.App.4th 811, 813, 816 [113 Cal.Rptr.2d 466] [modifying condition prohibiting a minor's association with " 'any gang members' " to prohibit only association with "persons known to the probationer to be associated with a gang"].) "[T]he rule that probation conditions that implicate constitutional rights must be narrowly drawn, and the importance of constitutional rights, lead us to the conclusion that this factor should not be left to implication." (*People v. Garcia* (1993) 19 Cal.App.4th 97, 102 [23 Cal.Rptr.2d 340].)

■ Although we will not specify the exact medications that Luis must take in order to comply with probation, recognizing that the medications may be changed over time by his doctors, we will modify the condition of probation to require only that Luis "continue taking medications prescribed for depression and social anxiety disorder, as directed by his doctors." As so tailored, the condition of probation is neither vague nor overbroad and does not violate his constitutional privacy or liberty rights.

## DISPOSITION

The judgment, with the condition of probation so modified, is affirmed.

Kline, P. J., and Lambden, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 2, 2009, S177007.