Filed 12/20/13  In re Anthony W. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re ANTHONY W., a Person Coming Under the Juvenile Court Law. | |
| | D063379 |
| THE PEOPLE, | |
| Plaintiff and Respondent, | (Super. Ct. No. JCM232543) |
| v. | |
| ANTHONY W., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Carolyn M. Caietti, Judge.  Affirmed.

Cynthia A. Grimm, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr. and Randall D. Einhorn, Deputy Attorneys General, for Plaintiff and Respondent.

The court found true the allegations in the People's petition that Anthony W. committed robbery (Pen. Code,[1] § 211; count 1); commercial burglary (§ 459; count 2); grand theft (§ 487, subd. (c); count 3); and simple battery (§ 242; count 4).

On appeal, Anthony contends the court erred when, over his objection, it admitted statements he contends were coerced in violation of *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*).  Specifically, he contends police deliberately undermined his *Miranda* rights with a two-step interrogation tactic in violation of *Missouri v. Seibert* (2004) 542 U.S. 600 (*Seibert*) when police arrested him and ordered him to retrieve incriminating evidence without first giving him a *Miranda* warning and when police later interrogated him at the police station after he received and waived his *Miranda* rights.  Anthony thus seeks to suppress the incriminating statements he made at the police station.

Anthony also contends the probation condition requiring him to take psychotropic medication *if* prescribed infringes upon his constitutional right to privacy and protected liberty interest under the due process clause.

As we explain, we reject Anthony's contentions and affirm the order of the court.

---

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

FACTUAL AND PROCEDURAL BACKGROUND

In December 2012, Donna Ollic was working the night shift at a convenience store when two black males entered the store. One was dressed in a black hoodie sweatshirt and the other in a long-sleeved striped hoodie. The two males stayed inside the store for about 10 minutes before making a purchase. When Ollic opened the register to make change, they attempted to take money from the register. A struggle ensued, and the two males fled the scene with $42.

Officer James Joyce responded to a radio call that two black males had stolen a large amount of $1's and $5's from the register of a convenience store. As Joyce was driving to the location of the robbery, he noticed a car with three black males traveling in the opposite direction. As a result of the timing of the radio call and the location of the car to the crime scene, Joyce conducted a traffic stop of the car. Joyce explained to the occupants that a robbery had just occurred and that they matched the description of the assailants. Joyce asked if any of the occupants had any money on them. One of the occupants responded he had a "wad of ones" and showed the money to the officer.

As Joyce ordered the occupants out of the car, he received a call from another officer who informed Joyce he had made contact with two black males near the location of the robbery and needed code cover.[2] Joyce took down the license plate number of the car and told the three males they were "free to leave."

---

[2]    The record shows one of the subjects began fighting with the officer, and he requested all available units respond to his location immediately.

While on his way to provide assistance to the other officer, Joyce received a call and learned the two black males stopped by the other officer were not suspects in the robbery. Joyce testified his "heart dropped" when he heard this information because he "figured [he] had the three [responsible] individuals sitting on the curb and . . . [had] just let them go."

Joyce next proceeded to the scene of the robbery and watched the store's surveillance video. Joyce identified the subjects in the video as two of the occupants of the car he had just stopped. Joyce testified that one of the black males in the video was wearing a long-sleeved striped hoodie, which was the same or similar hoodie worn by one of the occupants in the car pulled over by Joyce. This individual was later identified as Anthony.

Joyce ran the license number of the car and found it belonged to Rene Littlefield. Joyce drove to the Littlefield residence, found the three occupants of the car inside the residence and placed them under arrest. After handcuffing Anthony and before reading the minor his *Miranda* rights, Joyce told Anthony to get the "clothing he was wearing" during the robbery as well as "any money he possibly had from the robbery."

Once at the police station, Joyce for the first time read Anthony his *Miranda* rights. Anthony waived those rights and told Joyce that he and his friend were "joking about doing a robbery at a [convenience store]. They parked about two blocks away. [Anthony] and [another minor] . . . were going to purchase a bag of donuts, and they pushed the clerk away and took ones and fives."

4

After denying Anthony's motion to exclude evidence (discussed *post*), the court at the adjudication hearing made true findings as to all counts but stayed sentence on counts 3 and 4 under section 654. The court ordered, among other things, that Anthony comply with several probation conditions including to "participate in psychiatric/psychological counseling and if prescribed, take psychotropic medication as directed."

DISCUSSION

A. *Miranda Violation*

At the adjudication hearing, Anthony moved to exclude the statements he made at the police station because he contends they allegedly were made in violation of his *Miranda* rights. The court denied the motion, finding that even though Joyce should have given Anthony a *Miranda* warning before instructing the minor to get the clothes he was wearing during the robbery and any money from the robbery, there was no showing of coercion by Joyce. As such, the court ruled to admit the statements.

1. <u>Guiding Principles</u>

Constitutional protections of the Fifth and Fourteenth Amendments require all custodial interrogations be preceded by a warning of an individual's *Miranda* rights. (*Miranda*, *supra*, 384 U.S. 436.) A two-step interrogation procedure occurs when an officer questions a suspect and deliberately withholds *Miranda* warnings until the suspect confesses, at which time the officer gives *Miranda* warnings, obtains a waiver and elicits a confession repetitive of the first unwarned confession. (*Seibert*, *supra*, 542 U.S. at pp. 604, 609-611 (plur. opn. of Souter, J.).) This sort of question-first interrogation is

5

used essentially "to get a confession the suspect would not make if he understood his rights at the outset."  (*Id.* at p. 613.)

In *Seibert*, the court found the two-step procedure was deliberately used to undermine a suspect's *Miranda* rights.  There, the defendant was questioned at the police station for about 30-40 minutes while an officer squeezed the defendant's arm until she finally admitted to killing a young man in a fire.  She was then given a 20-minute break before officers "turned on a tape recorder, gave Seibert *Miranda* warnings, and obtained a signed waiver of rights from her."  (*Seibert*, *supra*, 542 U.S. at p. 605.)

In determining that the two-step procedure was deliberately used, the court looked at how, where and to what extent the interrogation took place.  The court concluded "[t]he unwarned interrogation was conducted in the station house, and the questioning was systematic, exhaustive, and managed with psychological skill.  When police were finished there was little, if anything, of incriminating potential left unsaid.  The warned phase of questioning proceeded after a pause of only 15 to 20 minutes, in the same place as the unwarned segment."  (*Seibert*, *supra*, 542 U.S. at p. 616.)  Thus, the court concluded police deliberately used the two-step procedure "to undermine the *Miranda* warnings."  (*Ibid.*)

The "[f]ailure to administer *Miranda* warnings creates a presumption of compulsion . . . [and] unwarned statements that are otherwise voluntary . . . must nevertheless be excluded from evidence under *Miranda*."  (*Oregon v. Elstad* (1985) 470 U.S. 298, 307 (*Elstad*).)  Although "*Miranda* requires . . . unwarned admission[s] must be

6

suppressed, the admissibility of any subsequent statement should turn . . . on whether it is knowingly and voluntarily made." (*Id.* at p. 309.) Thus, "absent deliberately coercive or improper tactics in obtaining the initial statement, . . . subsequent administration of *Miranda* warnings to a suspect who has given a voluntary but unwarned statement ordinarily should suffice to remove the conditions that precluded admission of the earlier statement." (*Id.* at p. 314.)

In *Elstad*, the court concluded the two-step interrogation procedure was not deliberately used to undermine *Miranda* and therefore the defendant's statements were admissible. There, the police went to the young suspect's house to take him into custody on a charge of burglary and, before the arrest, one of the officers had a brief encounter with the suspect. (*Elstad*, *supra*, 470 U.S. at p. 315.) The court characterized the officer's omission of *Miranda* warnings in *Elstad* as "unaccompanied by any actual coercion or other circumstances calculated to undermine the suspect's ability to exercise his free will." (*Id.* at p. 309.)

In sum, the rule we apply is the following: if police deliberately use a two-step interrogation procedure, then *Seibert* applies and the postwarned statements of a defendant must be excluded. However, if the two-step procedure was not deliberately used, then *Elstad* applies and the postwarned statements may still be admissible so long as they were voluntarily given.

To determine deliberateness, the court first determines whether there is "objective evidence and any available subjective evidence, such as an officer's testimony, [to]

7

support an inference that the two-step procedure was used to undermine the *Miranda* warning." (*United States v. Williams* (9th Cir. 2006) 435 F.3d 1148, 1158, fn. omitted.) Objective evidence includes the "timing, setting and completeness of the prewarning interrogation, the continuity of police personnel and the overlapping content of the pre- and postwarn[ed] statements." (*Ibid.*)

In reviewing a challenge to evidence based on *Miranda*, we first review the factual basis for the trial court's decision under the substantial evidence standard of review. (*People v. Glaser* (1995) 11 Cal.4th 354, 362.)  Once the facts have been determined, we review the decision to admit the statements under the de novo review standard.  Under that standard, we independently determine whether the statements were lawfully admitted into evidence.  (*People v. Weaver* (2001) 26 Cal.4th 876, 918.)

2. <u>Analysis</u>

The record shows Officer Joyce placed Anthony under arrest and asked him to retrieve his clothes and any money from the robbery.  Joyce knew from the vehicle stop as well as from watching the surveillance video from the convenience store that Anthony had changed his clothes after the robbery.  Joyce did not ask Anthony any questions while at the Littlefield residence.  Instead, the record shows Joyce questioned Anthony for the first time at the police station *after* he read Anthony his *Miranda* rights.

We conclude the court's finding that Joyce did not coerce Anthony while at the Littlefield residence is amply supported by the evidence in the record.  Indeed, unlike the defendant in *Seibert*, who was subject to interrogation for 30 or 40 minutes while an

8

officer squeezed her arm, in the instant case Joyce merely told Anthony to retrieve certain items of evidence after Anthony was placed under arrest. We thus independently conclude Officer Joyce's request of Anthony is similar to the conduct of police in *Elstad*, as it was "unaccompanied by any actual coercion . . . calculated to undermine the suspect's ability to exercise his free will." (See *Elstad*, *supra*, 470 U.S. at p. 309.) As such, we reject Anthony's contention he was subject to a deliberate, two-step interrogation procedure designed by police to circumvent his *Miranda* rights.

But that does not end our inquiry. We next turn to the issue whether Anthony voluntarily waived his *Miranda* rights when he spoke to Joyce at the police station.

"The essence of voluntariness is whether the government obtained the statements by physical or psychological coercion such that the defendant's will was overborne." (*United States v. Rith* (10th Cir. 1999) 164 F.3d 1323, 1333.) The standard of review for voluntariness challenges is similar to the standard we employ for purposes of *Miranda*, discussed *ante*: "We review independently a trial court's determinations as to whether coercive police activity was present and whether the statement was voluntary. [Citation.] We review the trial court's findings as to the circumstances surrounding the confession, including the characteristics of the accused and the details of the interrogation, for substantial evidence. [Citation.] '[T]o the extent the facts conflict, we accept the version favorable to the People if supported by substantial evidence.' [Citation.]" (*People v. Guerra* (2006) 37 Cal.4th 1067, 1093.)

9

Anthony contends the court erred when it found he voluntarily waived his *Miranda* rights at the police station. We disagree. Rather, the record shows that Joyce read Anthony his *Miranda* rights at the station; that Anthony indicated he understood those rights; and that Anthony in response stated he was willing to speak with Joyce. Anthony then provided statements regarding the details of the robbery. We thus conclude substantial evidence supports the finding of waiver and independently conclude the statements were lawfully admitted into evidence. (See *People v. Weaver*, *supra*, 26 Cal.4th at p. 918.)

B. *Probation Condition*

Anthony contends the probation requirement that he take all prescribed psychotropic medication *if* prescribed is unconstitutional and should be stricken.

1. Additional Background

At the detention hearing, defense counsel stated Anthony was currently taking medication and seeing a psychiatrist. Anthony's mother, however, stated her son was not currently taking any medication but understood he should be taking certain medication.

According to the probation officer's report, Anthony's mother told probation she had spoken with Anthony about the incident and "he explained to her that he was there during the offense, but did not feel like he was really 'there.' He told his mother it felt like an out of body experience." Anthony's mother also told probation about a time when she "heard the minor talking to himself," and Anthony also told his mother "he hears voices." Anthony's mother expressed a concern for Anthony's mental health due to the

10

long history of schizophrenia in her family and Anthony's exposure to abuse while living with his father.

Anthony was evaluated by a doctor, but the doctor did not prescribe any medication at that time. According to the probation social study report, the doctor was scheduled to meet with Anthony again two weeks later, but the record does not indicate whether this occurred or whether any medication was prescribed.

During the disposition hearing, the court imposed a number of probation conditions on Anthony. One condition it imposed was to order Anthony to "participate in psychiatric/psychological counseling and *if prescribed*, take psychotropic medication as directed." (Italics added.) The record shows defense counsel objected to the imposition of other probation conditions but did not object to this particular condition.[3]

2. Guiding Principles and Analysis

Welfare and Institutions Code section 727, subdivision (a) provides: "If a minor is adjudged a ward of the court on the ground that he or she is a person described by Section 601 or 602, the court may make any reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the minor, *including medical treatment*, subject to further order of the court." (Italics added.)

A court's discretion in ordering a condition of probation upon a minor must be reasonable and must serve justice and the rehabilitation and reform of the minor. (See *In*

---

[3]    We need not decide whether Anthony forfeited this claim, as the People contend, because, as discussed *post*, we conclude this issue is not ripe for decision on the basis of the limited record before us.

*re Antonio C.* (2000) 83 Cal.App.4th 1029, 1033; see also *In re Daniel R.* (2006) 144 Cal.App.4th 1, 6.) A probation condition is considered invalid when "it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . .'" (*People v. Lent* (1975) 15 Cal.3d 481, 486.)

Here, the court ordered Anthony to undergo a psychological evaluation and *if* ordered to do so, take any prescribed psychotropic drugs. Significantly, the record is silent regarding whether Anthony was placed on any medications. Given the mental health issues and concerns raised at the hearing, including by his own mother, we conclude the court properly exercised its discretion when it ordered Anthony to undergo psychiatric/psychological counseling. (See *In re Luis F.* (2009) 177 Cal.App.4th 176, 192 [noting probation condition requiring the minor to take prescribed medication was not unlawful and noting the minor could petition the court for modification of the terms of probation requiring this condition if the minor in the future "decide[s] that 'the side effects outweigh the benefits of his prescribed [medication]'"].)

However, because the record is silent regarding whether Anthony was in fact prescribed any medication(s) as a result of the counseling, we further conclude his challenge to this probation condition is not ripe. (See *Hunt v. Superior Court* (1999) 21 Cal.4th 984, 998 [noting the "ripeness requirement prevents courts from issuing purely advisory opinions, or considering a hypothetical state of facts in order to give general guidance rather than to resolve a specific legal dispute"]; see also *People v. Johnson*

12

(2006) 142 Cal.App.4th 776, 789, fn. 4 [noting the ripeness doctrine "'is rooted in the fundamental concept that the proper role of the judiciary does not extend to the resolution of abstract differences of legal opinion'"].)

In reaching this conclusion, we note that if medications are subsequently prescribed by Anthony's doctor and Anthony opposes taking such medications as a condition of his probation, Anthony can then challenge this condition in the trial court, where a full and complete record—including the necessary medical information—can be developed on this issue.[4]

---

[4]      In reaching our decision, we are not unaware of Anthony's contention that he has a constitutionally-protected privacy and liberty interest in avoiding the coerced administration of psychotropic drugs, citing *United States v. Williams* (9th Cir. 2004) 356 F.3d 1045, 1053-1055 (*Williams*) among other cases.  We agree with the reasoning of the court in *In re Luis F.*, which, under facts somewhat similar to those before us, rejected the *procedural* requirements imposed by the Ninth Circuit Court of Appeal in *Williams* in connection with various federal statutes it interpreted regarding the supervised release of a defendant who had been voluntarily taking "'antipsychotic' or 'neuroleptic' drugs" (*Williams*, *supra*, 356 F.3d at p. 1047, fn. 2) that were causing the defendant to suffer significant and unwanted side effects:  "[There are] significant differences between this case [i.e., *In re Luis F.*] and *Williams* that lead us to decline to adopt, in the context of this case, a blanket requirement of 'necessity' for a medication condition of probation, explicit consideration of less restrictive alternatives, or 'on-the-record, medically-grounded findings' as a matter of federal constitutional imperative.  First, we are dealing with a juvenile offender, not an adult.  Second, *Williams* reached its conclusion about the required procedures under the federal statutes pertaining to supervised release, which of course do not govern our determination.  Third, to the extent *Williams* called for independent medical evaluation, and to the extent such input is statutorily required in other contexts [citation], that input was supplied in this case . . . .  Fourth, and as noted above, there is no evidence in the record before us that the medications subject to [the minor's] condition of probation cause serious side effects comparable to those discussed in *Williams,* nor do they implicate the invasion of bodily privacy and sexual function . . . .  Finally, because [the minor] was already taking psychotropic medications for depression and social anxiety disorder—and apparently had no objection to continuing to do so [citation]—the aspect of *involuntary* administration of *unwanted* mind-altering drugs does not come into play here."  (*In re Luis F.*, *supra*, 177 Cal.App.4th at pp. 187-188.)

## DISPOSITION

The order is affirmed.

BENKE, Acting P. J.

WE CONCUR:

AARON, J.

IRION, J.