Filed 6/29/16  In re Larry N. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re LARRY N., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>LARRY N.,<br><br>        Defendant and Appellant. | A144172, A145148<br><br>(Contra Costa County<br>Super. Ct. No. J1401240) |

These are two consolidated appeals filed by Larry N., who was adjudged a ward of the court after pleading no contest to one count of second degree robbery with a firearms enhancement.  In the first appeal, Larry challenges three of the probation conditions that the juvenile court imposed upon him in its dispositional order:  a requirement that he take prescribed medication as directed; a requirement that he submit his cell phone and other electronic devices, and the codes to access them, to search; and a prohibition from using or possessing any deadly or dangerous weapon.  We will modify the medication condition to clarify it, modify the electronics search condition, and affirm the weapons condition.

In the second appeal, Larry challenges a later dispositional order, which was issued after he admitted violating other probation conditions.  At the dispositional hearing, the juvenile court acknowledged that Larry was entitled to credit for time spent

1

in custody and that the calculation in the dispositional report was incorrect, but did not specify the actual amount of credit. On appeal, Larry contends that the matter must be remanded for the juvenile court to make the appropriate calculation. We agree, and we will remand the matter for that purpose.

### FACTUAL AND PROCEDURAL BACKGROUND

We draw our summary of the facts from reports prepared by the probation department.

A.     *Second Degree Robbery—November 2014*

About 6:00 p.m. on November 24, 2014, Larry, then almost 17 years old, approached a group of six younger males aged 13 and 14 (the victims). Larry was on a bicycle; the victims were on foot. Four of the six recognized Larry by name from previous friendly encounters.

Larry rode up to the group and said, "What's up?" Then he reached under his shirt, pulled a handgun from his waistband, "racked the slide twice," pointed the gun at the face of one of the victims, and said, "Empty your pockets, if you move, I'll shoot you in the face." He told one of the victims that he liked his sneakers, and then told the victims to remove their shoes, which they did. Larry then put the gun near his waist, and patted down five of the six victims with his free hand. He took a cell phone and a dollar bill from one victim; from another he took a backpack, which contained an iPhone, a pair of sneakers and $20. He found nothing of value when he patted down the others. Larry got back on the bicycle and rode away, and later that evening he was arrested and booked into juvenile hall.

The district attorney filed a juvenile wardship petition pursuant to Welfare and Institutions Code section 602, subdivision (a), alleging five counts of second degree robbery (Pen. Code, §§ 211/212.5, subd. (c)) and one count of assault with a firearm (Pen. Code, § 245, subd. (a)(2)). Four of the robbery counts alleged that Larry personally used a firearm in the offense (Pen. Code, § 12022.53, subd. (b)). Larry pleaded no contest to one count of second degree robbery with a firearm enhancement, and agreed

2

that the juvenile court could use the facts behind the other counts in formulating a disposition. The remaining counts were dismissed.

While Larry was in juvenile hall, he experienced problems related to Adderall, which had been prescribed for him some time earlier in connection with a diagnosis of attention deficit hyperactivity disorder. Larry's mother had given him the medication daily, but Larry did not receive Adderall at juvenile hall from the time of his arrest on November 24, 2014, until about December 5. After he restarted Adderall, he began experiencing paranoid delusions, and he attacked another juvenile hall resident on December 7. Larry was hospitalized two days later and seen by a psychiatrist, who discontinued Adderall, and recommended Larry start taking antipsychotic medication if his disordered thinking continued. At a hearing on December 11, the juvenile court ordered a mental health and medications assessment. Among other recommendations, the report from the assessments stated that Larry could "benefit from continuing to be assessed and monitored by a psychiatrist in order to receive medication to help alleviate some symptoms, if appropriate." The report stated that Larry's disordered thinking stopped once he discontinued Adderall, and that his mental status afterward remained stable. When Larry returned to juvenile hall, he did not resume taking Adderall.[1] He was described as "calm, friendly and cooperative."

A contested dispositional hearing was held on January 6, 2015, which focused on the appropriate placement for Larry. The probation department recommended placement at the Bar-O Ranch, and Larry's counsel argued for placement at the Hannah Boys' Center. At the hearing, the juvenile court inquired about Larry's medication:

"THE COURT: . . . I have a couple of questions, not about the merits of the recommendation but the medications, for instance. [¶] . . .

"MS. MCNAMARA [Larry's attorney]: . . . And he's not currently taking any medication, as I heard the Court mention medication as well.

---

[1] In addition to Adderall for ADHD, Larry had been prescribed Albuterol, to be taken as needed for symptoms of asthma. The record does not reflect any problems arising from Albuterol.

"THE COURT: [¶] So he is not taking Adderall? [¶] . . .

"MS. MCNAMARA: . . . And he's currently not taking medication.

"THE COURT: So he's not taking—it's also—he's also prescribed a[n] asthma medication, albuterol. Is he not taking that either?

"MS. MCNAMARA: He is taking albuterol. As needed.

"THE COURT: Okay. I understand, but they make it available to him?

"THE JUVENILE: Yes."

Later in the hearing, the juvenile court adjudged Larry a ward of the court and committed him to the supervision of the probation department with placement at the Bar-O Boys Ranch. The court imposed various terms and conditions of probation,[2] to which Larry's counsel made no objections. Larry timely appealed the dispositional order. He challenges three of the probation conditions: a medication condition ("take prescribed medication as directed"); an electronics search condition ("submit . . . any cell phone or other electronic device in your possession, and the codes to access them . . . to search and seizure by a peace officer at any time of the day or night with or without a warrant");[3] and a weapons condition ("[y]ou are not to use or possess any deadly or dangerous weapon").

B.     *Probation Violation—February 2015*

Larry was placed at the Bar-O Boys Ranch on January 14, 2015. Less than a month later, he was removed to juvenile hall because of "out of control behavior," which included hitting a wall, throwing a bench, and yelling at staff. Because Larry promised to alter his behavior, he was permitted to go back to the ranch. After he returned, however,

---

[2] The wording of the conditions differs slightly between the reporter's transcript and the clerk's transcript. We agree with the parties that the oral pronouncement of the conditions should control, and we address the conditions as recorded in the reporter's transcript. (*People v. Gabriel* (2010) 189 Cal.App.4th 1070, 1073.)

[3] The electronics search condition is embedded in a general search condition, to which Larry makes no other objections: "You are to submit your person, property, any vehicle under your control, any cell phone or other electronic device in your possession, and the codes to access them, we need to add those words, and your residence to search and seizure by a peace officer at any time of the day or night with or without a warrant."

he continued to violate the rules, and was removed once again to juvenile hall. On February 27, the probation department filed a notice of probation violation, and at a hearing on March 2, Larry admitted the violation.

The dispositional report prepared by the probation department stated that as of March 16, 2015, Larry had credit for 113 days served. At the conclusion of the contested dispositional hearing on April 22, 2015, the juvenile court pronounced its orders, stating that Larry "will have credit for time served. And it's certainly more than the 113 days listed in this report."[4] Despite this, the court never determined the correct amount of the credit. Larry timely appealed.

We granted Larry's unopposed motion to consolidate his appeals of the January 6 and April 22, 2015 dispositional orders.

## DISCUSSION

We begin by addressing Larry's challenges to his conditions of probation, and then turn to his argument that the juvenile court erred in failing to calculate his pre-disposition credits.

A.    *Conditions of Probation*

1.    *Applicable Law*

The juvenile court is authorized to "impose and require any and all reasonable conditions that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced." (Welf. & Inst. Code, § 730, subd. (b).) We generally review the conditions imposed by the juvenile court for abuse of discretion. (*In re P.A.* (2012) 211 Cal.App.4th 23, 33.)

Because Larry's counsel did not object to any of the probation conditions below, we look first to *In re Sheena K.* (2007) 40 Cal.4th 875 (*Sheena K.*) to determine whether the objections have been forfeited. In *Sheena K.*, our Supreme Court contrasted appellate claims that probation conditions are unreasonable from claims amounting to facial

---

[4] Pursuant to the orders pronounced at the hearing, the medication, electronics search and weapons conditions that were imposed in January 2015 remained in full force and effect.

5

challenges that the phrase or language of a probation condition is unconstitutionally vague and overbroad. (*Id.* at p. 885.) Applying the rule of forfeiture to claims of "unreasonable probation conditions is appropriate, because characteristically the trial court is in a considerably better position than the Court of Appeal to review and modify a . . . probation condition that is premised upon the facts and circumstances of the individual case. Generally, application of the forfeiture rule to such claims promotes greater procedural efficiency because of the likelihood that the case would have to be remanded to the trial court for . . . reconsideration of probation conditions." (*Ibid.*) However, the rule of forfeiture does not apply to constitutional challenges on the grounds of vagueness or overbreadth if the error "is capable of correction without reference to the particular sentencing record developed in the trial court" and "present[s] a pure question of law." (*Id.* at p. 837.) Such challenges are "properly addressed on appeal, even if there was no objection below."[5] (*In re Luis F.* (2009) 177 Cal.App.4th 176, 181 (*Luis F.*).) However, even if a claimed error requires reference to the sentencing record, we may exercise our discretion to excuse the lack of a trial court objection if the claimed error affects a defendant's fundamental constitutional rights. (*People v. Vera* (1997) 15 Cal.4th 269, 276-277l; see also *Sheena K.*, *supra*, 40 Cal.4th at p. 887, fn. 7; *People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6.) We review constitutional challenges to a probation condition de novo. (*In re Malik J.* (2015) 240 Cal.App.4th 896, 901 (*Malik J.*).)

The legal principles governing our review of juvenile probation conditions that are claimed to be unconstitutionally vague or overbroad are set forth in *In re Victor L.* (2010) 182 Cal.App.4th 902 (*Victor L.*):

---

[5] In *Sheena K.*, the Supreme Court emphasized that generally "the probationer should object to a perceived facial constitutional flaw at the time a probation condition initially is imposed in order to permit the trial court to consider, and if appropriate in the exercise of its informed judgment, to effect a correction." (*Sheena K.*, *supra*, 40 Cal.4th at p. 889.)

"The permissible scope of discretion in formulating terms of juvenile probation is even greater than that allowed for adults. '[E]ven where there is an invasion of protected freedoms "the power of the state to control the conduct of children reaches beyond the scope of its authority over adults." ' (*Ginsberg v. New York* (1968) 390 U.S. 629, 638.) This is because juveniles are deemed to be 'more in need of guidance and supervision than adults, and because a minor's constitutional rights are more circumscribed.' ([*In re*] *Antonio R.*[ (2000)] 78 Cal.App.4th [937,] 941.)  Thus, ' "a condition of probation that would be unconstitutional or otherwise improper for an adult probationer may be permissible for a minor under the supervision of the juvenile court." ' ([*Sheena K.*], *supra*, 40 Cal.4th 875, 889 . . . ; see also *In re R.V.* (2009) 171 Cal.App.4th 239, 247; *In re Frank V.* (1991) 233 Cal.App.3d 1232, 1242-1243 [rule derives from court's role as *parens patriae*] [(*Frank V.*)].)

"Of course, the juvenile court's discretion is not boundless.  Under the void for vagueness doctrine, based on the due process concept of fair warning, an order ' "must be sufficiently precise for the probationer to know what is required of him, and for the court to determine whether the condition has been violated." ' (*Sheena K.*, *supra*, 40 Cal.4th at p. 890.)  The doctrine invalidates a condition of probation ' " 'so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.' " ' (*Ibid.*)  By failing to clearly define the prohibited conduct, a vague condition of probation allows law enforcement and the courts to apply the restriction on an ' " '*ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application.' " ' (*Ibid.*)

"In addition, the overbreadth doctrine requires that conditions of probation that impinge on constitutional rights must be tailored carefully and reasonably related to the compelling state interest in reformation and rehabilitation. (*Sheena K.*, *supra*, 40 Cal.4th at p. 890; [*Luis F.*, *supra*,] 177 Cal.App.4th [at p.] 189.)" (*Victor L.*, *supra*, 182 Cal.App.4th at p. 910.)

With these principles in mind, we turn to Larry's challenges to the conditions of his probation.

2.      *Medication Condition*

Larry challenges the condition requiring him "to take prescribed medication as directed," arguing that it is unreasonable under the standards set forth in *People v. Lent* (1975) 15 Cal.3d 481, 486 (*Lent*), unconstitutionally vague and overbroad, and that it violates his state constitutional right to privacy and his federal due process right to avoid the unwanted administration of anti-psychotic drugs because it is not supported by a "medically-informed" record.[6]

Pointing to a single reference in the record to a physician's recommendation that Larry start antipsychotic medication if there was a continuation of the disordered thinking he exhibited after resuming Adderall, and to the juvenile court's observation in determining Larry's placement that there was "the potential of medication," Larry interprets the condition as requiring him to take "any and all prescribed medications 'as directed', including antipsychotic drugs, or risk revocation of probation and a more restrictive disposition."

Although Larry has not been ordered to take any psychotropic drugs, he expresses concern that he "could be ordered to take them at any time without any consideration of the side-effects." He also argues that the condition imposed by the juvenile court is overbroad because his probation could be revoked if he failed to take medication for such conditions as "toenail fungus, acne or allergies." He argues that including the phrase "as directed" in the condition fails to give him fair notice, because it does not identify the

---

[6] *U.S. v. Williams* (9th Cir. 2004) 356 F.3d 1045, 1056 (*Williams*), decided in the context of federal statutes pertaining to supervised relief for an adult offender, holds that "the unique nature of involuntary antipsychotic medication and the attendant liberty interest require that imposition of such a condition occur only on a medically-informed record." The court in *Williams* "held that 'before a mandatory medication condition can be imposed at sentencing, the district court must make on-the-record, medically-grounded findings that court-ordered medication is necessary to accomplish one or more of the [factors relevant to supervised release] . . . [and] must make an explicit finding on the record that the condition "involves no greater deprivation of liberty than is reasonably necessary." ' (*Id.* at p. 1057, quoting 18 U.S.C. § 3583(d)(2).)" (*Luis F.*, *supra*, 177 Cal.App.4th at p. 186.)

person or persons authorized to direct him to take prescribed medications, and he argues that if the condition is interpreted to authorize a probation officer to direct him to take medication, "that would be an improper delegation of authority to someone who is not a medical or mental health professional." He concedes that, except for his argument that the term "as directed" is "unconstitutionally vague and overly broad on its face," his challenge requires reference to the record, and may be properly viewed as forfeited, but asks us to exercise our discretion to reach the merits, and strike the condition, or vacate it and remand the matter to the juvenile court for development of a medically-informed record.

The Attorney General argues that Larry has forfeited his claim as to the medication condition by failing to object below, and that in any event the claim is meritless because the medication condition, properly interpreted in context, applies only to medication that was prescribed to Larry as of the date of the dispositional hearing, which was Albuterol for his asthma. For context, the Attorney General refers to the probation report noting that Larry was prescribed Albuterol, to defense counsel's statement at the dispositional hearing that Larry was taking no medication except for Albuterol as needed, and to Larry's confirmation at the hearing that he had access to Albuterol while in custody. From this, the Attorney General concludes that the condition should be construed as requiring Larry to continue taking Albuterol as directed by his doctor: "Because [Larry] was already taking Albuterol as needed for his asthma symptoms, and he apparently had no objection to continuing to do so, the juvenile court properly exercised its discretion in ordering appellant 'to take prescribed medication as directed.' "

In reply, Larry does not argue that the condition as interpreted by the Attorney General is unconstitutional. He states that if the Attorney General's interpretation "is correct and the juvenile court only meant that Larry must continue taking his asthma medication as directed, there is no harm in modifying the condition to expressly state this requirement so that Larry will know what is required of him."

Because he did not object to the medication condition below, Larry has forfeited his objection that the condition is unreasonable under *Lent*. (*People v. Welch* (1993) 5 Cal.4th 228, 230.) In responding to his constitutional arguments, we find it helpful to take an approach similar to that taken by this division in *Luis F.*, a case discussed at some length in both parties' briefs. In *Luis F.*, the defendant was found to have committed attempted second degree robbery. (*Luis F.*, *supra*, 177 Cal.App.4th at p. 179.) Some time earlier, Luis had been diagnosed with depression and social anxiety disorder, for which he was prescribed medications, and he met with his doctors regularly to review his prescriptions and dosages. (*Id.* at p. 180.) The terms of Luis's probation included the requirement that he " 'continue taking prescribed medications as directed.' " (*Ibid.*) Luis did not object to the condition at the juvenile court, but on appeal he argued that the condition was vague and overbroad, and violated his federally-recognized liberty interest in avoiding coerced psychotropic medication, and his state constitutional right to privacy. (*Id.* at pp. 182-183.) Luis also argued that the condition could be interpreted to "require him to take any and all medications prescribed by his doctor, including for instance, medication for 'toenail fungus, acne . . . [or] allergies . . .' " (*id.* at p. 184) and suggested that he might at some point "decide that 'the side effects outweigh the benefits of his prescribed antidepressants.' " (*Id.* at p. 192.) The Court of Appeal was "troubled by the breadth of the medication requirement as stated by the juvenile court—if given too literal an interpretation—because it potentially implicates important constitutional rights," and elected to reach the merits even in the absence of objection below. (*Id.* at p. 183.)

In *Luis F.*, the Court of Appeal "uph[e]ld the juvenile court's intended exercise of discretion by construing the medication condition in a manner that allows it to pass constitutional muster." (*Luis F.*, *supra*, 177 Cal.App.4th at p. 192.) "It is proper to use the record of the proceeding below to elucidate the scope of the intended condition, to the extent it is otherwise ambiguous or overbroad. ([*Frank V.* (1991)] 233 Cal.App.3d [1232,] 1236, 1241-1242 [upholding probation condition forbidding the minor to associate with any individuals 'disapproved by his probation officer' based on juvenile court's limiting statement that he could not associate with people whom his parents or

10

probation officer 'tell you . . . that you can't hang out with'].)" (*Luis F.*, *supra*, 177 Cal.App.4th at p. 192.) Accordingly, in *Luis F.* the Court of Appeal modified the condition to clarify that Luis was required to " 'continue taking medications prescribed for depression and social anxiety disorder, as directed by his doctors.' " (*Ibid.*) The court noted that if at some point Luis decided he no longer wanted to take those medications, he could petition for a modification of the terms of his probation under Welfare and Institutions Code section 778. (*Ibid.*)

The juvenile court is authorized to "make any and all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of [a minor adjudged a ward of the court under Welfare and Institutions Code section 602], including medical treatment, subject to further order of the court." (§ 727, subd. (a)(1).) Thus a condition of probation can legitimately address issues of medical treatment. Here, the record reflects that the juvenile court was concerned that Larry have adequate access to his asthma medicine. However, there is no dispute that the medication condition imposed here would raise constitutional concerns if it were interpreted to mean that throughout the term of his probation he must take any medication that is prescribed for him, for any condition, at the direction of any unspecified individual.

We presume that the juvenile court judge knew and followed the law (*In re Julian R.* (2009) 47 Cal.4th 487, 498-499) and, like the court in *Luis F.*, we will uphold the juvenile court's exercise of discretion by construing the condition to comport with the constitutional requirements. (*Luis F.*, *supra*, 177 Cal.App.4th at p. 192.) Accordingly, in light of the record below, we construe the medication condition here to require Larry to continue taking asthma medication as directed by his doctor, as the Attorney General suggests, and we will modify the condition to reflect this clarification, as Larry proposes.

3.  *Electronics Search Condition*

Larry argues that the condition requiring him to allow searches of "any cell phone or electronic device in [his] possession, and the codes to access them" is overbroad because it is not tailored to both serve his rehabilitative needs and limit the impact on his constitutional rights. He contends that the condition requires him to allow access not

only to his devices, but to all the data stored on them, and also requires him to allow access to his social media accounts.[7]  He argues that we should strike the condition; remand the matter to the juvenile court for modification to comply with the juvenile court's purpose in imposing it (which, he concedes, was never stated); or assume that the purpose was to assure that Larry did not steal more cell phones and modify the condition to conform with the condition imposed in *Malik J.*, *supra*, 240 Cal.App.4th at page 905, which involved a minor who, like Larry, had stolen cell phones.[8]  Larry concedes that he may be viewed as having forfeited his challenge to the condition by failing to object in the juvenile court, and he concedes that his challenge is not strictly facial, but rather requires examination of the sentencing record.  He asks us to exercise our discretion to reach the issue anyway, because it "involves important constitutional rights," and proposes the following language, based on *Malik J., supra*, 240 Cal.App.4th at page 906, for the modified condition:  "You are to submit . . . any cell phone or other electronic device in your possession only after the device has been disabled from any internet or cellular connection and without specialized equipment designed to retrieve deleted information that is not readily accessible to users of the device . . . to search and seizure by a peace officer at any time of the day or night with or without a warrant."

---

[7] The Attorney General agrees with this interpretation.

[8] In *Malik J.*, the defendant argued that a search condition encompassing his electronics and passwords was unreasonable under *Lent, supra,* 15 Cal.3d 481 and constitutionally overbroad.  (*Malik J.*, *supra*, 240 Cal.App.4th at pp. 901-902.)  Malik had stolen a cell phone (*id.* at p. 900), and the People argued that the search condition was justified so that if Malik " 'were found in possession of a cell phone, a probation or police officer could check the phone to determine whether it had been stolen.' " (*Id.* at p. 902.)  The Court of Appeal held that the condition imposed by the juvenile court was overbroad because it "[went] considerably father than permitting police to search a cell phone to determine whether Malik is the owner.  It also require[d] him to turn over his passwords to, and authorize[d] unfettered searches of, all of his electronic devices and all of his social media accounts." (*Ibid.*)  The Court of Appeal in *Malik* modified the electronics search condition in several ways, including by striking the requirement that Malik "provide any passwords to any social media sites." (*Id.* at pp. 900-906.)

12

The Attorney General argues that Larry has forfeited his challenge by failing to raise it below, and that if we do reach the merits, we should conclude that the electronics search condition here "was properly imposed in light of appellant's crime, which involved forcibly taking cell phones from victims." The Attorney General argues that because the juvenile court stands in the shoes of a parent, it "could impose a condition that allows monitoring of social media communications, which is an important tool in tracking the activities of a wayward minor." The Attorney General implicitly concedes that the condition as imposed by the juvenile court is overbroad, and proposes that "to avoid any overbreadth concerns" we modify the condition to conform with the one approved by the Court of Appeal in *In re Patrick F.* (2015) 242 Cal.App.4th 104, 115, which has since been superseded by our Supreme Court's grant of review on February 17, 2016 (S231428). Her proposed modification is: "Submit all electronic devices under your control to a search of any text messages, voicemail messages, call logs, photographs, e-mail accounts and social media accounts, with or without a search warrant, at any time of the day or night, and provide the probation or peace officer with any passwords necessary to access the information specified."

The requirement that conditions of probation for a juvenile be tailored to meet the juvenile's needs has particular application to search conditions. This is because for adults, probation is a privilege, and adults may waive their Fourth Amendment rights by consenting to warrantless searches " ' "in exchange for the opportunity to avoid service of a state prison term . . . ." [Citation.]' " (*People v. Balestra* (1999) 76 Cal.App.4th 57, 65, quoting *In re York* (1995) 9 Cal.4th 1133, 1150.) In contrast, for juveniles, probation " ' "is an ingredient of a final order for the minor's reformation and rehabilitation." ' " (*In re Tyrell J.* (1994) 8 Cal.4th 68, 81, overruled on another ground in *In re Jaime P.* (2006) 40 Cal.4th 128.) A juvenile 'cannot refuse probation [citations] and therefore is in no position to refuse a particular condition of probation.' (*In re Binh L.* (1992) 5 Cal.App.4th 194, 202 (*Binh*).) Courts have recognized that a 'minor cannot be made subject to an automatic search condition; instead, such condition must be tailored to fit the circumstances of the case and the minor.' (See *People v. Rios* (2011) 193

13

Cal.App.4th 584, 597; see also *Binh*, *supra*, 5 Cal.App.4th at p. 203.)" (*In re Erica R.* (2015) 240 Cal.App.4th 907, 914.)

One consequence of this tailoring requirement is that review of a search condition will generally require reference to the sentencing record. Accordingly, as Larry concedes, a challenge to such a condition may be forfeited by failure to object below. If Larry had objected, we would likely have had a richer record to review with respect to the electronics search condition, including statements by the juvenile court, the district attorney, and the probation department. Still, we exercise our discretion to reach the issue in this case because the parties agree that that the condition imposed by the court has a very broad scope, and also agree that overbreadth can be addressed by modifying the condition, though they do not agree as to how the condition should be modified.

Larry does not contend that electronics search conditions—including conditions that require a probationer to provide passwords to social media accounts—are unconstitutional as a matter of law. He concedes that the juvenile court may curtail his exercise of his constitutional rights because it stands in the shoes of his parents, who have the constitutional right to direct their child's upbringing and education, and he recognizes that when he became a ward of the juvenile court and was placed on probation, his constitutional right to privacy was diminished. (See *Frank V.*, *supra*, 233 Cal.App.3d at p. 1243 [the juvenile court acts in *parens patriae*].) He contends that the modification proposed by the Attorney General "goes further than necessary," but that contention rests entirely on his assumption that the juvenile court's only purpose in imposing the electronics search condition was to determine whether Larry had stolen more cell phones. That assumption is not supported by the limited record here, where Larry made no objection below, and where nothing included in the probation department's dispositional report or said at the dispositional hearing suggests that the juvenile court's purpose in imposing the condition was so limited. This is in contrast to the situation in *Malik J.*, where the electronics search condition was imposed "in response to concerns that Malik might use cell phones to coordinate with other offenders, and that he had previously robbed people of their iPhones." (*Malik J.*, *supra*, 240 Cal.App.4th at p. 905.)

14

The Attorney General concedes that the condition is overbroad, and proposes a modification that identifies the type of electronic data subject to search. Because the juvenile court has authority to impose a probation condition that allows monitoring social media communications, and because the record does not allow us to infer that the juvenile court imposed the condition to monitor Larry's potential theft of cell phones, and bearing in mind Larry's failure to object below, we will modify the electronics search condition as proposed by the Attorney General.

        4.     *Weapons Condition*

Larry argues that the condition, "You are not to use or possess any deadly or dangerous weapon," is unconstitutionally vague because it does not include an explicit mens rea requirement. Relying on *In re Kevin F.* (2015) 239 Cal.App.4th 351 (*Kevin F.*), and *People v. Freitas* (2009) 179 Cal.App.4th 747, 752-753, he argues that without an explicit requirement, he does not have fair warning of what is expected of him. Larry amplifies this argument in his reply brief, claiming that the condition is vague because it does not reflect that whether something is a weapon may depend upon his intentions. Larry contends that adding the word "knowingly" will cure the vagueness, and requests that we modify the condition to read: "You are not to knowingly use or possess any deadly or dangerous weapons."

The Attorney General argues that the proposed modification is unnecessary. Relying on *People v. Moore* (2012) 211 Cal.App.4th 1179, 1188 (*Moore*), she maintains that "[t]he addition of an express knowledge requirement would add little or nothing to the probation condition," because probation may not be revoked absent a willful violation of the terms and conditions, and because Larry's lack of knowledge that he possessed a deadly or dangerous weapon would prevent a court from finding him in violation of probation.

We agree with the Attorney General. It is well established that "[a] probation condition should be given 'the meaning that would appear to a reasonable, objective reader.' " (*People v. Olguin* (2008) 45 Cal.4th 375, 382, quoting *People v. Bravo* (1987) 43 Cal.3d 600, 606.) The weapons condition imposed by the juvenile court here includes

the phrase "deadly or dangerous weapon," which "has a plain commonsense meaning" sufficient to put Larry on notice of the conduct that is prohibited by the condition: he may not possess or use any item specifically designed as a weapon and any item not specifically designed as a weapon if he intends to use the item to inflict or threaten death or great bodily injury. (*In re R.P.* (2009) 176 Cal.App.4th 562, 570 (*R.P.*) [rejecting a vagueness challenge to a probation condition prohibiting a minor from possessing any "dangerous or deadly weapon"].) Thus, even without the word "knowingly" the probation condition imposed by the juvenile court informs Larry that whether something is a weapon may depend upon his intentions.

In *Moore*, the Court of Appeal rejected defendant's argument that absent a scienter requirement, a weapons condition similar to the one at issue here was unconstitutionally vague.[9] (*Moore*, *supra*, 211 Cal.App.4th at p. 1189.) The condition challenged in *Moore*, like the one at issue here, differs in important respects from the weapons condition that was modified by the Court of Appeal in *Victor L.* The weapons condition in *Victor L.* ordered that the probationer " 'not remain in any building, vehicle or in the presence of any person where dangerous or deadly weapons or firearms or ammunition exist.' " (*Victor L.*, *supra*, 182 Cal.App.4th at p. 912.) The Court of Appeal modified the condition to order that he "not remain in any building, vehicle or in the presence of any person where [he] *knows one or more* dangerous or deadly weapons or firearms or ammunition exist." (*Id.* at p. 931.) The knowledge requirement was added in *Victor L.* to remedy a condition that required the probationer to avoid certain people and places, but "failed to clearly specify what conduct was prohibited, that is, what persons or areas the probationer[ was] required to avoid." (*Moore*, *supra*, 211 Cal.App.4th at p. 1188.) But there was no need to add a knowledge requirement to the condition in *Moore*, because the condition was " 'sufficiently precise for [the probationer] to know what is required of him' " (*Id.* at p. 1186, quoting *R.P.*, *supra*, 176 Cal.App.4th at p. 568), and because "it is

---

[9] The probation condition at issue in *Moore* was, " 'Do not own, use, or possess any dangerous or deadly weapons, including firearms, knives, and other concealable weapons.' " (*Moore*, *supra*, 211 Cal.App.4th at p. 1183.)

now settled that a probationer cannot be punished for presence, possession, or association without proof of knowledge."[10] (*Moore* at p. 1186.)

The reasoning of *Moore* applies to the similar condition at issue here, so we conclude that the absence of an express knowledge requirement does not eliminate the mens rea of willfulness that is necessary for Larry to violate the condition that prohibits him from possessing or using deadly or dangerous weapons, and consequently there is no need to add an explicit knowledge requirement to that condition.[11]

B.       *Calculation of Pre-Disposition Credits*

In a juvenile delinquency proceeding, "[A] minor is entitled to credit against his or her maximum term of confinement for the time spent in custody before the disposition hearing. (Pen. Code, § 2900.5, subd. (a); *In re Eric J.* (1979) 25 Cal.3d 522, 533-536.) It is the juvenile court's duty to calculate the number of days earned, and the court may not delegate that duty. (Pen. Code, § 2900.5, subd. (d); *People v. Vargas* (1988) 204 Cal.App.3d 1455, 1469, fn. 9.)" (*In re Emilio C.* (2004) 116 Cal.App.4th 1058, 1067.)

---

[10] We respectfully disagree with the approach taken by our colleagues in Division Four in *Kevin F.*, where a weapons condition was modified in several respects, including by the addition of a mens rea requirement. (*Kevin F.*, *supra*, 239 Cal.App.4th at p. 366.) In *Kevin F.* the challenged dispositional order was different from the one here, and did not include the phrase "deadly or dangerous weapons." Instead, Kevin F. was ordered not to "possess weapons of any kind, which means no guns, knives, clubs, brass knuckles, attack dogs, ammunition, or something that looks like a weapon. You are not to possess anything that you could use as a weapon or someone else might consider to be a weapon." (*Id.* at p. 357.) As modified by the Court of Appeal, the condition requires that defendant "[n]ot knowingly possess weapons of any kind, which means no guns, knives, brass knuckles, attack dogs, ammunition, or something that looks like a weapon. In addition, you are not to knowingly possess anything that you intend to use as a weapon or that you know someone else might consider to be a weapon." (*Id.* at p. 366.) We likewise respectfully disagree with the approach taken by the Third District in *People v. Freitas, supra*, 179 Cal.App.4th at page 752, cited by Larry, in which a probation condition prohibiting the possession of firearms or ammunition was modified to specify that the possession must be "knowing."

[11] On September 9, 2015, our Supreme Court granted review in *People v. Hall*, S227193, a case that concerns whether probation conditions that prohibit the possession of firearms and illegal drugs must include explicit statements of knowledge requirements.

Here, the juvenile court acknowledged that the 113-day credit described in the probation department report was not accurate, but the court did not indicate how many credits Larry had actually earned for time spent in custody. We agree with the parties that an appropriate remedy is to remand the matter to the juvenile court to calculate the number of days Larry was in custody before the dispositional hearing, and credit those days to him. (*In re K.B.* (2015) 238 Cal.App.4th 989, 991, 998-999.) Therefore, we will remand the matter to the juvenile court to calculate Larry's pre-disposition credits, which were incorrectly noted as 113 days in the "Disposition/Placement Review/Permanency Planning Minute Order" dated April 22, 2015.

## DISPOSITION

The medication condition is modified as follows: "Continue taking asthma medication as directed by your doctor." The search condition is modified as follows: "You are to submit your person, property, any vehicle under your control, and your residence to search and seizure by a peace officer at any time of the day or night with or without a warrant. You are to submit any electronic devices under your control to a search of any text messages, voicemail messages, call logs, photographs, e-mail accounts and social media accounts, with or without a search warrant, at any time of the day or night, and provide the peace officer with any passwords necessary to access the information specified." In all other respects, the January 6, 2015, dispositional order of the juvenile court is affirmed. This matter is remanded to the juvenile court with instructions to calculate Larry's pre-disposition credits.

18

_____
Miller, J.

We concur:


_____
Richman, Acting P.J.


_____
Stewart, J.


A144172, A145148, *People v. Larry N.*

19