Filed 11/16/20  In re A.C. CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| IN RE A.C., A Person Coming Under the Juvenile Court Law. | 2d Juv. No. B301737 (Super. Ct. No. 18JV-00377) (San Luis Obispo County) |
| THE PEOPLE OF THE STATE OF CALIFORNIA, Plaintiff and Respondent, v. A.C., Defendant and Appellant. | |

A.C. appeals the juvenile court's order sustaining a wardship petition after appellant admitted allegations that he committed a shoplifting (Pen. Code,[1] § 459.5, subd. (a)), and

---

[1] All statutory references are to the Penal Code unless otherwise noted.

resisted a peace officer in the performance of his duties (§ 148, subd. (a)(1); Welf. & Inst. Code, § 602). Appellant was declared a ward and was placed under the supervision of the probation department with various terms and conditions. One such condition requires appellant to seek his probation officer's approval before leaving San Luis Obispo County for more than 24 hours. Appellant contends that this condition must be stricken because it bears no relationship to his offenses as contemplated in *People v. Lent* (1975) 15 Cal.3d 481 (*Lent*), and is unconstitutionally overbroad. We affirm.

**FACTS AND PROCEDURAL HISTORY**

On the afternoon of October 12, 2018, San Luis Obispo County Deputy Sheriff Anthony Perry was in his patrol car when he observed appellant and J.C. run out of a store while each was carrying a 12-pack of beer. Appellant and J.C. ran into an alley and Deputy Perry activated his siren and pursed them. During the pursuit, appellant and J.C. abandoned the beer and jumped over a guard rail barrier. The deputy ended his pursuit and returned the beer to the store.

After leaving the store, Deputy Perry saw appellant and J.C. in an alley. Appellant and J.C. then ran through the courtyard of an apartment complex and into another alley. Two bystanders told the deputy they knew where appellant and J.C. lived. As Deputy Perry was following the bystanders, he saw appellant and J.C. again. This time, appellant and J.C. did not run away. As Deputy Perry approached them, appellant stepped in front of J.C., held out his hands, and asked what the deputy wanted.

Deputy Perry ordered appellant to go to the side of the road but appellant refused to comply. The deputy grabbed appellant's

2

left arm and appellant said, "[G]et your fucking hands off of me!" Deputy Perry put appellant's arm behind his back and handcuffed his wrist. Appellant tried to pull away and continued cursing at Deputy Perry. The deputy moved appellant against his patrol car and handcuffed his other wrist. Appellant demanded that the deputy "get [his] fucking hands off" of him and called him a "nasty ass pig[]." Deputy Perry told J.C. that he was also under arrest, but J.C. fled after appellant told him to do so. Appellant refused to comply with an order to lie on the ground, declined to state his age, and threatened Deputy Perry.

Appellant's sisters arrived called his mother, who came to the scene and identified appellant. When one of appellant's sisters told him to stop misbehaving or he would be charged with resisting arrest, appellant replied, "I don't give a fuck." Appellant was arrested and transported to juvenile hall.

Appellant was charged in a wardship petition with resisting an executive officer (§ 69; count 1), shoplifting (§ 459.5, subd. (a); count 2), resisting a peace officer in the performance of his duties (§ 148, subd. (a)(1); count 3), and being a minor in possession of an alcoholic beverage (Bus. & Prof. Code, § 25662, subd. (a); count 4). In February 2019, the juvenile court found that appellant was suitable for diversion, the terms of which required appellant to enroll in and complete treatment programs and assessments and perform community service. The terms of diversion also required appellant to comply with a nightly curfew and provided that he was not to leave San Luis Obispo County "for more than 24 hours without prior permission of the Probation Officer" or leave the state without the court's prior permission.

In July 2019, the court extended diversion until October 2019 because appellant had yet to complete several of its terms. In October 2019, the probation department recommended that diversion be terminated and the wardship petition reinstated due to appellant's continued failure to complete the terms of his diversion. The probation officer reported that appellant had not performed any community service or completed any treatment program. He had also been arrested again after he broke his father's television, threw a television remote at his father, and threw a rock at one of his sisters. He had not attended a single day of the current school year.

Appellant's father also reported that appellant often left home for several days without telling him where he was going. The probation department concluded that appellant's father was "unable to effectively supervise [appellant] and has shown he does not want to hold [appellant] accountable for his actions when he is not compliant with parental directives, probation directives, or not following the law." The probation department further concluded that appellant "requires a higher level of supervision to ensure he does not continue to behave in a way which [p]uts the community at risk."

The juvenile court terminated diversion and reinstated the warship petition. After appellant admitted counts 2 and 3 of the petition, the court sustained the petition and placed appellant home on probation with various terms and conditions. As with his diversion, appellant was ordered to comply with a nightly curfew and obtain permission from his probation officer before leaving San Luis Obispo County for more than 24 hours. Appellant's trial counsel objected to the latter term, claiming that it failed to satisfy the test set forth in *Lent* and unconstitutionally

4

infringed on his right to travel. Counsel "ask[ed] the Court to instead consider imposing an obligation to notify the Probation Department within two hours of leaving the county" and added "I think probation has certainly an affirmative obligation to know where their charges are at all times within reason." Counsel claimed the requirement that appellant obtain permission before leaving the county was unlawful under the third prong of *Lent* because "there is only the most tenuous and extreme nexus between the [*sic*] future criminality."

The prosecutor replied: "I think that the condition as described where [appellant] needs to have permission from the officer before [he] were to leave the county is . . . an appropriate supervisory tool. . . . [A]s I understand [it] . . . , [defense counsel's] recommendation would be that [appellant] merely needs to let the probation officer know that he is leaving, or that he has left. And if the probation officer were to say no, [appellant] would not necessarily be in violation because he would say, 'Look, all I had to do was tell you. I didn't have to get your permission,' and I think that that hamstrings the probation officer of their ability to properly monitor and supervise [appellant] because . . . under the proposed term of the Probation Department, it would create a situation where [appellant] needs to get that okay from the probation officer, work out the terms, work out the conditions, the timing of when and where he's going to go, when and where he's going to come back, who he's going with. And while that's a lot of tasks that are placed on him, if we are asking the Probation Department to help supervise [appellant] and help [him] be successful in his probation, we need to give the probation officer the ability and tools to properly guide and monitor that as well."

5

The juvenile court officer who was present agreed with the prosecutor that the challenged condition was "necessary and appropriate." The court asked appellant how many times a year he left San Luis Obispo County and appellant replied, "Once. Not really that often."

The court concluded that the condition requiring appellant to obtain permission before leaving San Luis Obispo County for more than 24 hours "is a bit of an imposition. However, [appellant] doesn't leave San Luis Obispo County that often, so I don't think it's a burden. It's a minimal burden, given . . . the facts and circumstances surrounding his own situation." The court imposed the condition.

## DISCUSSION

Appellant contends the probation condition requiring him to obtain his probation officer's permission before leaving San Luis Obispo County for more than 24 hours was imposed in violation of *Lent* and is in any event unconstitutionally overbroad. He asserts that the condition should be modified, as requested by his trial counsel, to provide that he need only give his probation officer two hours' notice before leaving the county for more than 24 hours. We are not persuaded.

When granting probation, the juvenile court is authorized to "impose and require any and all reasonable conditions that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced." (Welf. & Inst. Code, § 730, subd. (b).) The court has broad discretion to impose any such condition for purposes of rehabilitation "so long as it is tailored to specifically meet the needs of the juvenile." (*In re Josh W.* (1997) 55 Cal.App.4th 1, 5.) This is because juveniles generally require more guidance and

6

supervision than adults. The state, when it assumes responsibility for a minor, stands in the shoes of the parents and, like a parent, may restrict a child's exercise of constitutional rights. (*In re Antonio R.* (2000) 78 Cal.App.4th 937, 941 (*Antonio R.*).)

While a juvenile court has broader discretion in formulating probation conditions than adult criminal courts, that discretion "is not boundless." (*In re Luis F.* (2009) 177 Cal.App.4th 176, 189 (*Luis F.*).) Juvenile probation conditions must meet the three-part *Lent* test of reasonableness applied to adult probationers. (*In re D.G.* (2010) 187 Cal.App.4th 47, 52-53; *Lent*, *supra*, 15 Cal.3d 481.) Under *Lent*, "[a] condition of probation will not be held invalid unless it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . .' [Citation.] Conversely, a condition of probation which requires or forbids conduct which is not itself criminal is valid if that conduct is reasonably related to the crime of which the defendant was convicted or to future criminality." (*Lent*, at p. 486.) The *Lent* factors are "conjunctive—all three prongs must be satisfied before a reviewing court will invalidate a probation term. [Citations.] As such, even if a condition of probation has no relationship to the crime of which a defendant was convicted and involves conduct that is not itself criminal, the condition is valid as long as the condition is reasonably related to preventing future criminality." (*People v. Olguin* (2008) 45 Cal.4th 375, 379-380 (*Olguin*).)

A juvenile probation condition may also be challenged as unconstitutionally overbroad. (See *In re Sheena K.* (2007) 40

7

Cal.4th 875, 887.) "The essential question in an overbreadth challenge is the closeness of the fit between the legitimate purpose of the restriction and the burden it imposes on the defendant's constitutional rights—bearing in mind, of course, that perfection in such matters is impossible, and that practical necessity will justify some infringement." (*In re E.O.* (2010) 188 Cal.App.4th 1149, 1153.) "'If available alternative means exist which are less violative of the constitutional right and are narrowly drawn so as to correlate more closely with the purposes contemplated, those alternatives should be used . . . .'" (*Luis F.*, *supra*, 177 Cal.App.4th at p. 189.)

We generally review the imposition of probation conditions for an abuse of discretion, and independently review constitutional challenges to probation conditions. (*People v. Appleton* (2016) 245 Cal.App.4th 717, 723.)

It is undisputed that the probation condition requiring appellant to obtain permission from his probation officer before leaving San Luis Obispo County for more than 24 hours satisfies the first two prongs of *Lent*, i.e., that the condition (1) bears no relationship to the crimes he was found to have committed; and (2) relates to conduct which is not in itself criminal. The trial court did not err in finding, however, that the condition did not satisfy the third prong of *Lent* because it is reasonably related to appellant's future criminality.

In *Olguin*, our Supreme Court held that "[a] condition of probation that enables a probation officer to supervise his or her charges effectively is . . . 'reasonably related to future criminality.' [Citations.]" (*Olguin*, *supra*, 45 Cal.4th at pp. 380-381.) The court recently clarified that *Olguin* should not be read "to categorically permit any probation conditions reasonably

8

related to enhancing the effective supervision of a probationer" (*In re Ricardo P.* (2019) 7 Cal.5th 1113, 1127 (*Ricardo P.*).) because the third prong of *Lent* "contemplates a degree of proportionality between the burden imposed by a probation condition and the legitimate interests served by the condition." (*Ricardo P.*, at p. 1122.)

In *Ricardo P.*, the challenged condition required the minor, who was found to have committed two burglaries, to submit to warrantless searches of his electronic devices as well as any accounts he could access through those devices. (*Ricardo P.*, *supra*, 7 Cal.5th at p. 1115.) Although the minor had not used any such devices in committing the burglaries, the condition was imposed for the purpose of monitoring his compliance with probation conditions prohibiting him from possessing or using drugs. In imposing the condition, the trial court relied on its belief that minors generally brag about their drug use on social media. (*Id.* at pp. 1119-1122.) The Supreme Court held that the condition satisfied the third prong of *Lent* because it "impose[d] a very heavy burden on privacy with a very limited justification." (*Id.* at p. 1124.)

The challenged condition in this case does not impose any such burden on appellant's privacy, and the proffered justification for the condition was substantial. Appellant complains that the condition unreasonably infringes upon his constitutional right to travel. It is well-settled, however, that a travel ban that does not banish a minor from his home, but rather prevents the minor from entering a locale where he might do or suffer harm *or where he cannot be adequately supervised*, is constitutionally permissible. (See *Antonio R.*, *supra*, 78 Cal.App.4th at pp. 941-942 [minor was properly required to

9

obtain probation officer's permission before traveling to Los Angeles County, where he committed his crimes]; *People v. Thrash* (1978) 80 Cal.App.3d 898, 902 [upholding probation condition providing that the defendant was not to "leave town" without prior approval from his probation officer].)

Here, there is ample evidence in the probation report to support the trial court's finding that the challenged condition is reasonably related to appellant's future criminality. (See *Ricardo P., supra*, 7 Cal.5th at p. 1122 [recognizing that "courts may properly base probation conditions upon information in a probation report that raises concerns about future criminality unrelated to a prior offense"].) First, the condition does not ban appellant from traveling out of the county, nor does it require him to seek permission every time he wants to leave the county. Rather, he need only seek permission to leave for more than 24 hours at a time. Appellant conceded that he rarely left the county, so any burden on his right to travel is minimal.

Moreover, the probation department reported that appellant often disappeared for days at a time while on diversion and did not keep his father apprised of his whereabouts. His father failed to report that appellant was missing and was unsure where appellant was going. As the People persuasively argue, "appellant's proclivity to disappear, and his father's inability to prevent or report such disappearances, renders it necessary that the probation officer be informed of appellant's plans for extended inter-county travel to facilitate effective supervision." Appellant is also subject to a curfew condition, so the probation officer must know when appellant is leaving the county for more than 24 hours so he can be effectively supervised. "[P]robation officer's awareness of probationers' whereabouts facilitates supervision

10

and rehabilitation and helps ensure probationers are complying with the terms of their conditional release." (*People v. Moran* (2016) 1 Cal.5th 398, 406.)

Contrary to appellant's claim, his proposed modification of the condition to merely require him to give his probation officer two hours' notice before leaving the county for more than 24 hours would not be sufficient for his supervision. As other conditions of his probation, appellant must regularly attend school and participate in and complete community service and rehabilitative programs. If appellant were to leave the county for more than 24 hours without permission, his probation officer would be unable to adequately supervise him and thus ensure his compliance with these terms and conditions of his probation. We agree with the trial court's conclusion that the challenged condition imposed a "minimal" burden on appellant when compared to the state's legitimate interest in adequately supervising him. Because the burden imposed on appellant as a result of the challenged condition is not outweighed by the interests it is intended to serve, the condition is valid under the third prong of *Lent*. (*Ricardo P.*, *supra*, 7 Cal.5th at p. 1122.)

Appellant's reliance on *People v. Soto* (2016) 245 Cal.App.4th 1219, is unavailing. The defendant in that case, who was convicted of driving under the influence and driving with a suspended license, was ordered as a condition of probation to obtain his probation officer's permission or a court order before changing his residence in Monterey County. In concluding that the condition was invalid under *Lent*, the court of appeal reasoned that nothing in the record indicated that the defendant's living situation would contribute to his future criminality or that leaving Monterey County would impede his

11

rehabilitation. (*Soto*, at p. 1228.) As we have explained, the record in this case is sufficient to support the challenged condition. Moreover, the defendant in *Soto* was an adult. Appellant is a minor, and allowing him to leave the county for more than 24 hours without his probation officer's permission would impair not only his probation officer's ability to effectively supervise him, but also his own ability to complete the requirements of his conditional release.

Appellant fares no better in claiming that the challenged condition is unconstitutionally overbroad. As we have noted, the burden it places on appellant is minimal and the modification proposed by his trial attorney would undermine the purpose of the condition. Moreover, we presume that the probation officer will grant any reasonable request to leave the county for more than 24 hours. (*Antonio R.*, *supra*, 78 Cal.App.4th at p. 942.) Given "the closeness of the fit between the legitimate purpose of the restriction and the burden it imposes on the defendant's constitutional rights" (*In re E.O.*, *supra*, 188 Cal.App.4th at p.1153), the condition survives appellant's overbreadth challenge.

## DISPOSITION

The juvenile court's order is affirmed.

NOT TO BE PUBLISHED.

PERREN, J.

We concur:

GILBERT, P.J.                TANGEMAN, J.

12

Charles S. Crandall, Judge
Superior Court County of San Luis Obispo

_____

David R. Greifinger, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Zee Rodriguez, Supervising Deputy Attorney General, and Charles J. Sarosy, Deputy Attorney General, for Plaintiff and Respondent.